OPINION OF THE COURT
Marie M. Lambert, S.
This is a proceeding to withdraw funds from an infant’s account to prevent foreclosure on the family co-operative apartment (co-op). Petitioner, the infant’s mother, was an accommodation guarantor on a loan taken out by the infant’s father. The co-op, a five-room, three-bedroom brownstone located at 5 East 75th Street, New York, New York, was pledged as collateral for the loan which has a current outstanding balance in excess of $238,000. The infant’s father died a violent death on February 3, 1982 and the loan is now in default. The bank which made the loan and which holds the shares in the co-op as collateral has threatened to sell the shares to satisfy the loan. The liquid assets of the mother are insufficient to pay off the loan.
In requesting the withdrawal of $200,000, petitioner notes that the infant was the beneficiary of $510,000 in insurance proceeds on his father’s life and that this asset constitutes the father’s taxable estate. If the amount requested was permitted to be used towards payment of the loan, an estate tax deduction would be generated and a tax *225 savings of $70,000 would be achieved. The estate tax is to be apportioned against the infant and is to be paid from his funds.
In return for permission to withdraw funds, petitioner agrees to pay the remaining part of the loan and to give the infant a one-half interest in the co-op. An appraisal submitted with this application indicates that the co-op has a current market value of $450,000 to $500,000. Petitioner avers that approval of her request would enhance the infant’s estate because the infant would be receiving a current equity interest of approximately $225,000 in return for a net investment of $130,000 ($200,000 minus the $70,000 estate tax savings to him).
An affidavit submitted by the infant’s psychiatrist indicates that the circumstances attending the father’s death have had a traumatic impact on the infant and that “it is very important that his life not be further disrupted at this time.” He further avers that a change of abode would have a deleterious effect on the infant with the severity of the harm to depend on the “actual circumstances of the move.”
A guardian ad litem was appointed to represent the infant and has issued a report. She states that petitioner and the infant have a warm, loving relationship and that obtaining a similar apartment, given petitioner’s income, would prove difficult. She agrees with the infant’s psychiatrist that the death of the infant’s father has had a traumatic effect and that the infant’s health could be adversely affected if the infant was moved to a dissimilar neighborhood. Notwithstanding the above, the guardian recommends that the request be rejected and that the investment of the infant’s funds in income producing securities be continued. In her report, the guardian incorrectly states that the $70,000 tax advantage described above would not inure to the benefit of her ward.
The Surrogate’s Court is authorized to direct the application of an infant’s funds for his support and education. (SCPA 1713, subd 1.) “Support” is a word of broad-based definition and has been interpreted to mean that which is necessary for the infant’s welfare. (Matter of Scolnick, NYLJ, Dec. 30, 1981, p 15, col 4, citing Matter of Farrell, *226 123 Misc 113; Matter of Lapides, 144 Misc 19; Voessing v Voessing, 4 Redf 360.) What is necessary for an infant’s welfare can be economic, physical and emotional. In the matter sub judice the court is convinced that the emotional and physical health of the infant is best served by maintaining him in his current abode. The apartment in which the infant and his family reside is one which he has known for more than one half his life. Unlike most other apartments in New York County, it contains an enclosed grass yard in which the infant can play. It is doubtful that petitioner could relocate to similar circumstances. Even if she could, the amount of harm to the infant would never be known. Emotional attachments in a traumatized child'can be the glue which holds the personality together.
Were this court faced with a proposal which was not financially advantageous to the infant, a decision to grant the application might be a much tougher call. Here, however, the infant is saving $70,000 in taxes and is receiving a capital gain, albeit unrealized, in the approximate sum of $100,000. It should be noted that the amount which is being invested in the co-op is less than 30% of the infant’s assets when the tax savings are taken into account.
This court is familiar with those cases which have denied requests for similar relief. (Matter of White, NYLJ, Sept. 11, 1978, p 14, col 2; Matter of Gutierrez, NYLJ, April 30, 1982, p 16, col 5.) The facts in those cases make them distinguishable from the case at bar. Rarely has economic advantage and exigent circumstances combined in such compelling fashion as they have here. Accordingly, the application is granted. New share certificates shall issue to the infant and shall reflect a one-half ownership interest in the co-op. A restriction shall be placed on the shares issued to petitioner which shall indicate that they cannot be pledged, transferred or otherwise encumbered. The proprietary lease shall be changed to include the name of the infant, and petitioner is prohibited from subletting or assigning the lease without further order of this court. Petitioner is required to purchase fire and casualty insurance sufficient to meet the fair market replacement value of the co-op. The fee of the guardian ad litem is fixed in a reduced amount.