OPINION OF THE COURT
James D. Benson, S.
This petition for an order (a) authorizing and permitting the transfer of the 5Vfe% interest savings accounts to Federally insured certificates of deposit; (b) authorizing the withdrawal of funds in payment of the bills and expenses set forth in paragraphs 11, 12, 13, 14, 15, 16 and 17 of the petition; and (c) authorizing and permitting petitioner as guardian to withdraw and pay the sum of $200 per month to infant’s father and mother for the year 1985 for the better maintenance and support of the said infant is granted to the extent that:
(a) Petitioner is authorized and permitted to transfer the 51/2% interest savings accounts to Federally insured certificates of deposit;
(b) The petitioner is authorized to withdraw the sum of $14,459 by check made payable to Internal Revenue Service for payment of income tax upon the income attributable to the infant’s funds for the years 1977 through 1984, and the sum of $2,960 by check payable to New York State Income Tax for payment of income tax upon the income attributable to the infant’s funds for the years 1977 through 1984. Petitioner may apply to the court for an order authorizing the withdrawal of *761 additional funds required to pay interest and penalties upon delinquent income taxes upon presentment of statements of the respective taxing authorities of the amounts of such interest and penalties which are due and payable;
(c) The petitioner is authorized to withdraw the sum of $150 by check payable to the order to Dr. R. Croce, ophthalmologist, less the amount of medical insurance payments and reimbursements for his medical services rendered to the infant;
(d) Petitioner is authorized to withdraw the sum of $600 by check made payable to the order of Firmbach and Firmbach, accountants, for services in the preparation of income tax returns;
(e) Petitioner is authorized to withdraw the sum of $1,500 by check made payable to the order of Dr. Zell, D.D.S., for orthodontic work for the infant;
(f) Petitioner is authorized to withdraw the sum of $200 per month for purposes of providing maintenance and education of the infant, provided however, that petitioner shall account annually to this court, in January of each year for withdrawals and expenditures;
(g) Petitioner is permitted to withdraw the sum of $200 to be applied to the purchase of Scout uniforms and equipment for the infant;
(h) Petitioner is further permitted to withdraw the sum of $350 to be paid to John B. Garrity, Esq., as and for his attorney’s fees on this application.
The application is in all other respects denied.
Gregory is the son of Nancy Kovacik Curry. His father and grandfather died in an automobile accident when he was one year old. Claims for wrongful death were made and as the result a sum of money in excess of $150,000 was recovered and deposited pursuant to the order of the court for Gregory’s benefit. Funds on deposit exceeded $250,000 at the time of this application. Later on, his mother remarried and her husband adopted Gregory. His mother gave birth to two more sons. Now Gregory lives with his parents and two younger brothers, aged 9 and 7 years. Obviously, the younger brothers are not entitled to the considerable wealth to which Gregory is entitled, and over which he will be able to exercise sole control when he becomes 18 years old.
The family income, after taxes, is stated to be $30,406 per year. The parents own a home upon which interest, amortization and tax and insurance escrow amount to $469 per month. The *762 balance of their claimed monthly expenses brings the total to $2,591.92, and the annual total to $31,103.04.
Gregory’s mother had funds on deposit amounting to $65,000. She states that she has used almost $40,000 of that fund to maintain the family standard of living.
The parents have neglected the funds which were deposited to Gregory’s account subject to the further order of the court by permitting the funds to remain at ordinary interest of 5Vfe% from June 1975 until the date of the application, when better investment opportunities were available upon application to the court in various certificates of deposit, and also by failing to prepare and file timely income tax returns and to pay the taxes due in order to avoid interest and penalties.
It is probable that the vast disparity in wealth between Gregory and his two younger brothers, not to say his parents, bids fair to create stresses within the family. Nevertheless, the law is clear that the fund must be preserved for the infant’s benefit when he attains majority. Exceptions are proper when the income and assets of the parents are not sufficient to provide for his needs. The withdrawal of funds to provide an infant with higher education or unusual surgical, medical or dental expenses should be made “upon clear proof that the parent could not afford these monetary outlays”. (DeMarco v Seaman, 157 Misc 390, 397.) “ ‘The withdrawal of funds * * * requires clear proof of the inability of the parents to supply funds needed for the infant’s sole use and benefit in order to equalize or lessen the consequences of the infant’s injuries.’ ” (Matter of Smith v Lavine, 78 Misc 2d 776, 779; see also, Marsh v La Marco, 46 AD2d 888, and the authorities therein cited; Franklin v Newberry, 77 Misc 2d 1042; Gaffney v Constantine, 87 NYS2d 131; 2 Weinstein-Korn-Miller, NY Civ Prac H 1206.03a.)
It is necessary here to check an impulse to divide at least some of the benefit among the other members of the family. The impulse is born of a very large apparent disparity in wealth. Yet, the law does not allow for such exercise of discretion on the basis of the sums involved. It would be error to determine that a fund of $200,000 should be shared with parents and siblings, while a fund of $20,000 should be guarded under long-accepted principles of stewardship over infants’ funds. No authority has been urged or found upon which such a distinction could be made. (Matter of Serrano, 75 Misc 2d 1037; Leon v Walker, 1 Misc 2d 219, 220.)
The recovery on the claim for wrongful death created a fund exclusively to compensate the persons, including Gregory, for *763 their pecuniary loss arising from the death of a person upon whom the law imposed the burden of their support. (Family Ct Act §413; EPTL 5-4.3, 5-4.4.) It differs from a recovery of damages for personal injuries sustained by an infant which have a disabling effect, placing him at a permanent disadvantage in the survival process. On the one hand, the recovery for personal injuries is established as a fund to lessen the consequences of the injuries which the infant sustained. On the other, the recovery for wrongful death is established as a fund to replace a lost source of support while the infant remains unable to provide for himself. In this posture of the matter, it appears that different standards should be applied to applications for leave to withdraw funds for the use of infants in the two cases. Clearly, it would be improper in either case to allow funds deposited for the infant’s benefit to be withdrawn for the benefit of his family. But if judicial supervision can be exercised effectively over the use of funds withdrawn from the proceeds of a wrongful death recovery, may such funds not properly be used for the infant’s support?
The statutory bases upon which applications for withdrawal of infants’ funds are made are different in the two categories of cases. Applications for withdrawal of funds recovered for personal injuries are provided by CPLR 1211, which is entitled “Allowance for infant’s support”. This statute guides the exercise of the court’s discretion in the following language:
“(a) Petition to supreme court, county court or surrogate’s court; contents. A petition to the supreme court, county court or the surrogate’s court for the application of an infant’s property or a portion thereof to the infant’s support, maintenance or education shall set forth in detail:
“1. the amount and nature of the infant’s property, where it is situated and how invested, his income from such property or any other source and any claim against the infant;
“2. whether or not the infant’s parents are living and, if either of them is living, all circumstances relative to their ability to support the infant, and if neither of them is living, the names of other persons legally obligated to support the infant and the circumstances relative to their ability to support the infant; and
“3. the terms of any previous order made by any court within or without the state for similar relief and the disposition made of any property pursuant thereto.”
The quoted section’s application is not limited by its language to funds acquired through recovery of casualty claims and does not appear on its face to include only recoveries for personal *764 injuries which an infant sustained. But the inclusion of CPLR 1211 is a part of article 12 entitled “Infants [and] incompetents”. This article establishes the procedures under which persons under such disability shall institute and maintain actions and proceedings and prescribes specifically the steps which must be taken to settle an action or claim of an infant or a judicially declared incompetent (CPLR 1207, 1208) and the disposition of the proceeds of the claims of such persons (CPLR 1206). CPLR 1206 provides in part that the court may (1) distribute property to the guardian of an infant for the infant’s use and benefit, (2) distribute such property to the adult spouse of an infant, for the infant’s use and benefit, (3) distribute such property to a person with whom the infant resides or who has some interest in his welfare for the infant’s use and benefit if its value does not exceed $1,000, (4) require the property to be deposited in a financial institution in an insured deposit, subject to the further order of the court, until the infant attains the age of 18 years, or (5) direct the investment of the property in bonds of the State of New York or of the United States, deposits in an insured account in a financial institution or investment in a bond and mortgage on improved real property having a value of at least double the amount invested. In the last case, the court may direct that only interest or income be received by the guardian. (CPLR 1210 [d].) Under this statute, the court may require or dispense with a bond “according to the conditions set forth in section seventeen hundred eight of the surrogate’s court procedure act”. Thus the court is vested with broad discretion in the form and management of funds received for the benefit of infants. It appears from the structure df this statute that its focus is centered upon funds received for the benefit of wards of the court, that is, infants and persons judicially declared incompetent, in compensation for injuries sustained.
The provisions of the Surrogate’s Court Procedure Act are designed to apply to funds received from sources different from those described in the Civil Practice Law and Rules. These funds consist of inheritances and proceeds of claims for wrongful death.
SCPA article 17 grants to the Surrogate’s Court “power over the property of an infant” and authorizes the court to appoint a guardian of the person or property or of both of an infant, whether or not the parent or parents are living (SCPA 1701). It further empowers the court to “dispense with a bond wholly or partly and direct that the guardian jointly with a person or depositary designated collect and receive the moneys and other property of the infant as directed by order” and to direct the *765 deposit of the funds in the name of the guardian in an insured account in a financial institution, to be removed only upon order of the court until the infant attains the age of 18 years. (SCPA 1708.) This section further provides that property of an infant not under such joint control shall be secured by a bond.
SCPA 1713, vyhich is entitled “Administration of infant’s property” provides the authority and the discretion of the Surrogate’s Court in allowing the application of an infant’s funds. This statute provides, in relevant part:
“1. Upon the petition of the guardian or of the infant or of any person in his behalf, the court, upon notice to such persons, if any, it deems proper, may by order direct the application by the guardian of the infant’s property to
“(a) the support and education of the infant * * *
“2. In all cases the court may determine the amount of expenditure of the infant’s funds that is reasonable, proper and just under the circumstances, taking into consideration the liability, if any, of any other person to pay such expenses, his financial ability to pay and all other relevant facts. The payment may be made from income or principal”.
SCPA 2220 does not distinguish among the sources from which funds may be received for the benefit of an infant. It requires the payment of such funds to the guardian of an infant, where a legacy or distributive share, “the proceeds of any action brought as prescribed in EPTL 5-4.1 or * * * the proceeds of a settlement of a cause of action brought in behalf of an infant for personal injures” is received on an infant’s behalf. The distinction between the powers granted to the court to allow the withdrawal and use of an infant’s funds under SCPA 1713 as opposed to those granted under CPLR 1206 point up the legislative acknowledgment that the source of the funds must guide judicial discretion in the disposition of the funds.
Specific authorization contained in SCPA 1713 (1) (a) to use such funds for support and education of the infant have removed many of the restraints upon such authority which have been imposed under CPLR 1206. Courts have recognized the distinction in allowing the use of infant’s funds for the infant’s maintenance and education. (Matter of Polinsky, 33 Misc 2d 1002; Matter of M.H.H., 118 Misc 2d 224.) While it is clear that withdrawals of infant’s funds to pay the costs of his education and maintenance must be made from income before any invasion of principal is permitted, the accruals to the infant’s funds have been large enough to assure that the withdrawals herein authorized will not involve any invasion of principal. No such *766 invasion will be authorized without further application to this court.
The branches of the application which request leave to withdraw funds for the purchase of a saxophone and a computer are not supported by any factual showing that there is a connection between the infant’s education and training and the acquisition of these items.
The foregoing constitutes the decision of the court.